## In the Matter of the WELFARE OF D.D.N.

No. C9–97–2354.

Court of Appeals of Minnesota.

Aug. 11, 1998.

Hubert H. Humphrey III, Attorney General, St. Paul, for respondent.

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, for respondent.

William E. McGee, Hennepin County Public Defender, Warren R. Sagstuen, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., HARTEN and SCHULTZ,* JJ.

## OPINION

CRIPPEN, Judge.

Following adjudication and disposition on a delinquency petition accusing appellant D.D.N. of a burglary offense, he challenges a pretrial determination that he is competent to proceed in the case, contending that his mental handicap prevents necessary assistance to his attorney and involves some superficiality in his understanding of the proceedings. The prosecutor's response includes the argument that delinquency proceedings may proceed against a child "when an adult with the same abilities would be considered incompetent to stand trial." Although the prosecutor's plea to relax the governing standard for juvenile cases is precluded by a supreme court decision and its subsequent juvenile court rule, we affirm the competency determination.

## FACTS

In June 1997, appellant D.D.N., then 15 years old, was charged by petition with first-degree attempted burglary. Because of competency concerns, the juvenile court ordered that appellant undergo a 35–day evaluation at a residential treatment center.

A representative from the treatment center and experts for both appellant and the prosecution testified at the competency hearing. Following the hearing, the juvenile court concluded that appellant was competent to proceed to trial. The court subsequently adjudicated appellant a delinquent and placed him in a juvenile treatment facility. Appellant now appeals the court's pretrial competency ruling.

## ISSUES

1. Is the level of competency for a child in a juvenile court proceeding lower than the level of competency required for trial and sentencing of an adult?

2. What is the appropriate standard of review in an appeal of a child competency determination?

3. Did the trial court err in determining that appellant was competent to proceed in this matter?

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

## ANALYSIS

### 1. Juvenile Competency Standard

■ The briefs of the parties allude to an expanding body of research and reporting on the diminished capacity of adolescents to assist their own interests at various stages in the prosecution of their alleged offenses.[1] The prosecuting attorney points to the scholarly opinion in this literature that, notwithstanding evidence of the diminished capacity of adolescent offenders to participate in court proceedings, a relaxed standard of competency might be justified in proceedings where the court will make a rehabilitative disposition. But in Minnesota, a lower standard for juvenile competency is precluded both by the supreme court's juvenile justice rules and by that court's earlier decision.

Minnesota rules of court relating to juvenile and adult competency hold children and adults to the same competency standard. Minn. R. Juv. P. 20.01, subd. 1(B), which sets the standard for juvenile competency, states:

> A child shall not be permitted to enter a plea or be tried or sentenced for any offense if the child lacks sufficient ability to:
>
> (1) consult with a reasonable degree of rational understanding with defense counsel; or
>
> (2) understand the proceedings or participate in the defense due to mental illness or mental deficiency.

The adult competency standard similarly defines competency as the ability to consult with counsel and to understand the nature of the proceeding.[2] This similarity of standards is also dictated by *In re Welfare of S.W.T.*, 277 N.W.2d 507, 511–12 (Minn.1979), in which the Minnesota Supreme Court (prior to the enactment of the juvenile competency rule) applied the adult standard in determining the competency of a child.

Here, the prosecuting attorney argues that the availability of shorter-term sanctions and the rehabilitative nature of those dispositions may justify a lower level of competency. But this argument overlooks the reality that rehabilitative sanctions can and do involve a major loss of a child's liberties.

■ The Georgia Court of Appeals, also addressing the issue of competency of juveniles, pointed directly to the liberty interests of the child that are at risk in a proceeding leading to a rehabilitative disposition. In *In re S.H.*, 220 Ga.App. 569, 469 S.E.2d 810, 812 (1996), the court held that the juvenile court had violated S.H.'s due process rights by adjudicating him a delinquent when it had also found that the 12–year–old was incompetent to stand trial. The court found that, although juvenile proceedings emphasize rehabilitation, thereby sparing "the child some of the collateral consequences of a criminal conviction," both "juvenile and criminal proceedings may result in a significant loss of liberty." *Id.* 469 S.E.2d at 811. Principles of fundamental fairness, therefore, require that juveniles be afforded the same protection against being tried while incompetent as adults. *Id. See* C.S. Lewis, *The Humanitarian Theory of Punishment,* 3 20th Century: An Australian Quarterly Review 5 (1949), *reprinted in* 6 Res Judicatae 224, 227 (1953) (portraying the severity of risks to one's liberties in rehabilitative placements, even when chosen wholly for benevolent reasons).

■ The prosecutor's argument also overlooks the fact that, although rehabilitation eliminates retribution and deterrence of others, it does not always eliminate punishment.

---

1. *See e.g.,* Thomas Grisso, *Juvenile Competency to Stand Trial,* Crim. Just., Fall 1997, at 5; *see also* Thomas Grisso, *The Competence of Adolescents As Trial Defendants,* 3 Psychol. Pub. Pol'y & L. 3 (1997); Elizabeth S. Scott et al., *Evaluating Adolescent Decision Making in Legal Contexts,* 19 Law & Hum. Behav. 221 (1995); Elizabeth S. Scott, *Judgment and Reasoning in Adolescent Decisionmaking,* 37 Vill. L.Rev. 1607 (1992); Laurence Steinberg & Elizabeth Cauffman, *Maturity* of Judgment in Adolescence: Psychosocial Factors in Adolescent Decision Making, 20 Law & Hum. Behav. 249 (1996).

2. The adult competency standard is

> [a] defendant shall not be permitted to enter a plea or be tried or sentenced for any offense if the defendant:
>
> (1) lacks sufficient ability to consult with a reasonable degree of rational understanding with defense counsel; or
>
> (2) is mentally ill or mentally deficient so as to be incapable of understanding the proceedings or participating in the defense.

Minn. R.Crim. P. 20.01, subd. 1.

The juvenile court's dispositions must be rehabilitative and tied to the needs of and opportunities for the child, Minn.Stat. §§ 260. 185, subd. 1, 260.011, subd. 2(c) (1996), but these laws do not prohibit "a rational, punitive disposition, one where the record shows that correction or rehabilitation of the child reasonably cannot be achieved without a penalty." *In re Welfare of C.A.W.,* 579 N.W.2d 494, 497 n. 5 (Minn.App.1998).

A determination of competency, even in the context of juvenile adjudicatory proceedings, is a fundamental right. *S.W.T.,* 277 N.W.2d at 511. Because of this and because dispositions in juvenile proceedings, including rehabilitative dispositions, may involve both punishment and a substantial loss of liberty, the level of competence required to permit a child's participation in juvenile court proceedings can be no less than the competence demanded for trial or sentencing of an adult. Children, like adults, must be able "to understand the nature of the proceedings against [them] and to participate in [their] own defense." *Id.*[3]

## 2. Standard of Review

■ To determine whether the trial court erred in failing to inquire further on the defendant's competency to stand trial, the United States Supreme Court has employed the standard of whether the trial court gave "proper weight" to the evidence produced. *Drope v. Missouri,* 420 U.S. 162, 179, 95 S.Ct. 896, 907, 43 L.Ed.2d 103 (1975). This independent review of the evidence, the Court explained, was appropriate in circumstances where all pertinent evidence was undisputed, leaving only the question of "the inferences that were to be drawn" from this evidence. *Id.* at 174–75, 95 S.Ct. at 905. The Court otherwise described its duty to "analyze the facts" in the case. *Id.* at 175, 95

S.Ct. at 905. Following *Drope,* the Minnesota Supreme Court adopted the "proper weight" standard in its review of competency determinations. *See State v. Bauer,* 310 Minn. 103, 117, 245 N.W.2d 848, 856 (1976) (employing "proper weight" standard in similar circumstance), *rev'd in part on other grounds,* 513 N.W.2d 260, 262–63 (Minn.App. 1994); *accord S.W.T.,* 277 N.W.2d at 512 (supreme court determined that, on the record before it, S.W.T. was not competent to stand trial). In keeping with these precedents, we independently review the record before us to determine if the trial court drew proper inferences from the evidence bearing on D.D.N.'s competence to proceed in this matter.

## 3. Competency of D.D.N.

■ The competency of appellant was assessed by a residential treatment center staff person; by Dr. Harry Hoberman, a licensed psychologist named by the court; and by Dr. R. Owen Nelson, a clinical psychologist whose evaluation was requested by the defense.

Testing at the treatment center indicated that appellant's performance IQ was "Low Average," but his verbal IQ fell within the "Intellectually Deficient" range.[4] Testing also showed that appellant had "very limited verbal memory, poor verbal abstraction abilities, minimal verbal reasoning and a marginal vocabulary." Each of the experts who examined appellant found him to be limited in his communication and slow to respond to questions.

At the competency hearing, Dr. Hoberman testified that appellant was competent to stand trial. Hoberman felt that, despite the low verbal IQ score, appellant was able to respond to questions and understood what

---

**3.** We also note appellant's observation that, when making a competency determination, the court should consider not only the child's ability to consult with counsel and understand the judicial proceeding but also the child's age as a measure of his capacity. Researchers confirm the characteristics of youth that bear on a person's competency. *See* Thomas Grisso, *The Competence of Adolescents as Trial Defendants,* 3 Psychol. Pub. Pol. & L. 3, 24 (1997). But these factors, immaturity, developmental delays, and

emotional disorders unique to age, are measured in the assessment of competency, without attempting to give weight to age alone as a measure of the condition.

**4.** Appellant's verbal IQ was in the 0.4th percentile (or in the lowest 4/10th of 1%) when compared with others his own age. To put this into context, for every 2,500 15–year–olds, only 10 would have the same score or lower.

was asked of him. Dr. Hoberman testified that when appellant was asked questions about the roles of various persons involved in the judicial process, about his relationship with his attorney, about whether he understood what his attorney was telling him, and about the nature of the trial process, he was able to respond "to almost all of the questions." Hoberman also testified that he believed appellant understood the charges against him and the possible outcomes. Further, appellant recalled the reading of his *Miranda* rights and his decision not to speak to police without counsel. Dr. Hoberman further testified that appellant discussed a previous court experience and that "he had been part of making the decision" to plea bargain in that case. But the witness cautioned that, due to appellant's deficiencies in processing verbal information, appellant's understanding of the events at trial should be continually scrutinized.

Eric Beuning, the treatment center case manager, testified that appellant seemed to understand fully what was going on while at the center. He also testified that appellant was "very outgoing, very friendly" with his peers and had no apparent difficulty expressing himself. On one occasion, Beuning reported that appellant said he would "call his lawyer" when told that food spilled on the table would not be replaced.

Dr. Nelson testified that appellant "has some very significant cognitive limitations that accordingly limit to a great degree his ability to understand the proceedings and to

participate in his defense." He also testified that he did not believe that appellant understood the judicial process. But Nelson admitted that appellant had "a basic awareness of what's right and wrong," a "limited" understanding of who did what in the criminal justice system, and the cognitive capability of participating in his defense.[5]

To be competent to proceed to trial or sentencing, the accused person must be able to consult with counsel and understand the nature of the proceedings in which he or she is involved. Minn. R. Juv. P. 20.01, subd. 1(B); *S.W.T.*, 277 N.W.2d at 511. Our review of the record indicates that, notwithstanding appellant's limited intellectual abilities, the trial court properly inferred from the evidence presented that appellant was competent to proceed. In our collective view, the evidence identifies narrow areas of difficulty, principally in communicating with counsel during interrogation of witnesses. These difficulties do not compel reversal of the juvenile court's finding that appellant had the ability to understand and participate in proceedings and to consult with counsel.

**Affirmed.**

---

**5.** We are troubled by Dr. Nelson's testimony that "in terms of that part of the [trial] process that is fluid and ongoing, I can't think of anything that would in my opinion render [appellant] competent." But in light of appellant's previous experience with the juvenile court process, his understanding about the work of an attorney, his recollection of the reading of the *Miranda* rights, and his decision not to speak to police without counsel, we believe that appellant has a less sweeping kind of disability than what appears to be indicated by Dr. Nelson's generalized opinion.