140 Nev., Advance Opinion 25

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF D.C., JR., DATE OF BIRTH 01/19/2007, A MINOR 15 YEARS OF AGE.

No. 84563



FILED

APR 18 2024

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

D.C., JR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

Appeal from a district court order certifying a juvenile for criminal proceedings as an adult. Eighth Judicial District Court, Family Division, Clark County; William O. Voy, Judge.

*Vacated and remanded with instructions.*

Darin Imlay, Public Defender, P. David Westbrook, Chief Deputy Public Defender, and Haylee M. Kolkoski, Deputy Public Defender, Clark County, for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Alexander G. Chen and Jonathan E. VanBoskerck, Chief Deputy District Attorneys, Clark County, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, PICKERING, J.:

The juvenile court certified D.C., Jr., for prosecution as an adult on charges of murder, attempted murder, and robbery. D.C. has an IQ of 66 and was 14 years old when the events giving rise to the charges occurred. Through counsel, D.C. requested a competency determination before proceeding to the certification hearing. After an initial finding of incompetency followed by competency-restoration sessions, the juvenile court declared D.C. competent to proceed. In declaring D.C. competent, the juvenile court did not expressly address the conflicting and equivocal expert testimony as to D.C.'s understanding of the proceedings and ability to assist counsel. It also appears to have applied juvenile-court-specific competency standards, emphasizing, for example, that there is no right to a jury trial in a juvenile delinquency adjudication.

This was error. A juvenile who faces the possibility of prosecution as an adult on serious criminal charges as a result of a certification proceeding must meet the adult criminal court standard for competence. Because the juvenile court appears to have applied an incorrect standard and did not support its determination with adequate findings, we vacate the certification order and the competency determination and remand for the juvenile court to reassess D.C.'s competency.

I.

This case grows out of a Las Vegas Metropolitan Police Department investigation into three separate incidents during which an assailant or assailants robbed victims at gunpoint, fatally shooting two of them and wounding the third. Detectives determined that bullets used in

each of those three incidents were fired from the same handgun. All three incidents occurred within a quarter mile of each other and within the timespan of just over a week. The third victim had messaged an unknown individual to set up a meeting about three minutes before the shooting. Detectives traced the IP address of the person on the other end of that conversation to the address of the apartment where D.C. lived with his father. Eyewitness descriptions of the assailant(s) varied, but in serving a search warrant for that address, detectives saw D.C. and concluded that he matched at least one witness's description. In D.C.'s bedroom, detectives found a watch matching the watch stolen from a victim, as well as a hoodie resembling one seen in a surveillance video near the time of the first incident. Following the search, detectives arrested D.C.

The State filed a delinquency petition against D.C. and, on the same day, petitioned the juvenile court to certify D.C. for criminal proceedings as an adult. D.C.'s attorney requested a competency evaluation. The next month, Dr. Lisa Foerster determined that D.C. did not meet all of the competency criteria but opined that competency restoration sessions likely would restore him to competence. D.C. attended three competency restoration sessions with Dr. Bonnie Brown, who reported at the conclusion of the sessions that D.C. had "demonstrated significant improvement related to competence and would be considered appropriate to proceed with adjudication at this time." But Dr. Brown also noted that D.C.'s comprehension level was consistent with his cognitive abilities—he had a documented comprehension level of second to third grade—and was "not [ ] expected to significantly improve." She also cautioned that without "frequent rehearsal, [D.C. was] at risk to again become not competent." Dr.

Brown therefore recommended periodic reassessment and, if needed, additional restoration sessions.

Following the restoration sessions with Dr. Brown, Dr. Foerster again evaluated D.C. Her report was inconclusive about whether D.C. was competent, as she suspected that D.C. had "put forth less than optimal effort." She agreed with Dr. Brown that D.C. might benefit from educational classes to maintain his knowledge. At D.C.'s counsel's request, Dr. Sharon Jones-Forrester conducted a neuropsychological evaluation. She concluded that D.C. was not competent to proceed and that he was unlikely to become competent because of his intellectual disability and neurocognitive deficits.

All three experts testified at the competency hearing. Dr. Jones-Forrester testified that D.C. had an intellectual disability, as well as unspecified neurocognitive disorder—possibly consistent with fetal alcohol syndrome—"over and above what would be expected from his intellectual disability." In Dr. Jones-Forrester's opinion, D.C. was incompetent to proceed. Dr. Foerster did not dispute that D.C. had an IQ of 66, and both Dr. Foerster and Dr. Brown agreed that D.C. had "cognitive deficits." As with her second evaluation, Dr. Foerster's testimony was inconclusive about D.C.'s competence; she suspected he was malingering and left it to the juvenile court to determine whether D.C. was competent. Dr. Brown concluded that D.C. was still competent to proceed, stating that she stood by her report's conclusion that D.C. should have frequent rehearsal. She criticized Dr. Jones-Forrester for measuring D.C.'s competence by an adult standard, instead of a more relaxed juvenile court standard. Addressing D.C.'s poor test results, Dr. Brown suggested that that D.C. may have realized that it was "to his benefit to not be competent." Dr. Jones-Forrester

disagreed that D.C. was trying to appear lower functioning than he was, noting that she based her opinion on recognized validity measures. Unlike Dr. Jones-Forrester, Dr. Foerster chose not to use validity measures, concluding that because of D.C.'s IQ of 66, "the validity of the results would be difficult to stand by."

The juvenile court deemed D.C. competent. It did so orally, not in writing. Before announcing its ruling, the juvenile court described the differences between juvenile court and adult criminal court. In part, the juvenile court focused on plea deals, stating that "the plea bargain really is a nomenclature that comes from the adult criminal side" and suggested that plea bargaining was often something that children in juvenile court struggle to understand. As part of that discussion, the court noted that in juvenile court, whether the alleged offense was a misdemeanor or a felony was usually "not that important" to the outcome. And because juvenile court does not have jury trials, the court was unsure why a competency evaluator would even ask a child about jury trials. The court's discussion suggests that the court doubted whether D.C. understood jury trials—it stated that "if we were in a criminal proceeding, you would really want to make sure the individual understands what the role of the jury is and how that works . . . . But we don't have juries down here."

Following this discussion, the juvenile court considered NRS 62D.140's three competency prongs and orally pronounced D.C. "competent to proceed at the present time." As noted, it did not memorialize its competency determination in writing. The certification hearing took place the next month. At the certification hearing, the juvenile court considered the factors established for discretionary certification in *In re Seven Minors*, 99 Nev. 427, 664 P.2d 947 (1983), *disapproved on other grounds by In re*

*William S.*, 122 Nev. 432, 442 n.23, 132 P.3d 1015, 1021 n.23 (2006). It found prosecutive merit on all counts and certified D.C. for criminal proceedings as an adult.

## II.

D.C. appeals both the certification order and the competency determination. An order certifying a juvenile for proceedings in adult criminal court is a final appealable judgment under NRAP 3A(b)(1). *Castillo v. State*, 106 Nev. 349, 351, 792 P.2d 1133, 1134 (1990). In this case, the appeal of the certification order brings with it the antecedent competency determination since, if D.C. was incompetent, the juvenile court could not proceed to the certification hearing. *In re Two Minor Children*, 95 Nev. 225, 231, 592 P.2d 166, 169 (1979) (holding that if a minor was not competent, the court "could go no further with the proceedings"); *see* NRS 62D.190.

## A.

On appeal, D.C. argues that a finding of competency in juvenile court requires competency to stand trial. And because the juvenile court did not assess his competency to stand trial but instead only found him competent to participate in juvenile court proceedings, D.C. continues, the juvenile court improperly created a lower competency standard. The State responds that the juvenile court appropriately found D.C. competent using the standard from *Dusky v. United States* and that the competency finding was supported by substantial evidence. D.C. replies that the juvenile court's competency determination was not based on substantial evidence. This court reviews a district court's competency determination for abuse of discretion. *See Calvin v. State*, 122 Nev. 1178, 1182, 147 P.3d 1097, 1099 (2006). But we owe no deference to legal error, to a determination that is unsupported by substantial evidence, *cf. id.* (explaining that the

Supreme Court
OF
Nevada

(O) 1947A

6

determination will stand if supported by substantial evidence), or "to findings so conclusory they may mask legal error," *Davis v. Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015).

1.

Under *Dusky*, the test for determining competence is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (internal quotation marks omitted). Nevada's adult competency statute, NRS 178.400(2), conforms to the *Dusky* standard and satisfies constitutional due process requirements. *See Calvin*, 122 Nev. at 1182-83, 147 P.3d at 1100 (interpreting NRS 178.400 (1995)). Nevada's juvenile competency statute, NRS 62D.140, largely tracks NRS 178.400(2), incorporating its three-pronged test. Both statutes require that individuals understand the nature of the delinquency allegations or criminal charges. NRS 62D.140(1); NRS 178.400(2)(a). Both require individuals to "[u]nderstand the nature and purpose of the court proceedings." NRS 62D.140(2); NRS 178.400(2)(b). And both require individuals to be able to "[a]id and assist . . . counsel . . . with a reasonable degree of rational understanding." NRS 62D.140(3); NRS 178.400(2)(c). Proceedings may not go forward while the child in delinquency proceedings or the defendant in criminal court is incompetent. NRS 62D.190(1) ("[D]uring the period that the child remains incompetent, the child may not be . . . [a]djudicated a delinquent child[,] . . . [p]laced under the supervision of the juvenile court[, or c]ommitted to the custody of a correctional facility."); NRS 178.400(1) ("A person may not be tried or adjudged to punishment for a public offense while incompetent.").

SUPREME COURT
OF
NEVADA

(O) 1947A

7

Although *Dusky* addresses competency in the context of standing trial, the standard of competency that it announced has broader application. *See Dusky*, 362 U.S. at 402; *In re Two Minor Children*, 95 Nev. at 230-31, 592 P.2d at 169. And NRS 62D.140 references "court proceedings" rather than trial specifically. Under NRS 62D.140, a child is incompetent when the child does not have the "present ability" to meet the three competency prongs. We read NRS 62D.140 to require the juvenile court to assess the child's competency to proceed under the circumstances of the particular case, rather than to always require the juvenile court to assess the child's competency to stand trial in adult court, as D.C. argues.

A question remains, however, as to the level of ability or comprehension the child must have to be found competent to proceed. Some courts evaluate a child's competency using "juvenile norms." *E.g., In re Carey*, 615 N.W.2d 742, 747-48 (Mich. Ct. App. 2000); *In re J.M.*, 769 A.2d 656, 662 (Vt. 2001). These courts emphasize that juvenile proceedings treat juveniles "more gently" than criminal proceedings treat adults, *In re SWM v. State*, 299 P.3d 673, 683 (Wyo. 2013) (internal quotation marks omitted), and that children's "limited life experience" may prevent them from understanding proceedings with an adult level of comprehension, *In re J.M.*, 769 A.2d at 662; *see also In re Carey*, 615 N.W.2d at 748. Other courts have determined that "the level of competence required to permit a child's participation in juvenile court proceedings can be no less than the competence demanded for trial or sentencing of an adult." *In re Welfare of D.D.N.*, 582 N.W.2d 278, 281 (Minn. Ct. App. 1998); *Commonwealth v. B.H.*, 548 S.W.3d 238, 248 (Ky. 2018) (holding that the level of competence required by due process to permit a child's participation in juvenile transfer

SUPREME COURT
OF
NEVADA

(O) 1947A

8

proceedings is no less than that required of an adult to proceed in criminal court).

Rather than categorically hold that juvenile norms or an adult level of competence applies to a competency determination made by a juvenile court, in our view, the application of the *Dusky* standard is context-specific. The facts and circumstances of a case affect the level of ability that a child must have to be competent under *Dusky* and NRS 62D.140. On one hand, if a case in juvenile court "raises no complex legal or evidentiary issues and if the possible dispositions and consequences of adjudication are not similar to those of a criminal conviction," then "a juvenile with more limited decisionmaking capacity than would be required in a criminal proceeding" could be competent to proceed in juvenile court. Restatement of Children and the Law § 15.30 cmts. c & d (Am. L. Inst., Tentative Draft No. 2, 2019). So, in some cases, what other courts refer to as evaluating competency according to juvenile norms may be appropriate. On the other hand, "[t]he rationale for applying *Dusky* according to juvenile norms does not apply if the charges are serious, or if potentially serious consequences can follow adjudication." Restatement of Children and the Law § 15.30 cmt. c (Am. L. Inst., Tentative Draft No. 2, 2019). Where the punishment stakes are equal to those facing adult criminal defendants and the objective is punitive, a finding that the juvenile is competent at the level of an adult criminal defendant is required. *See* Elizabeth S. Scott & Thomas Grisso, *Developmental Incompetence, Due Process, and Juvenile Justice Policy*, 83 N.C. L. Rev. 793, 798 (2005) ("The adoption of a less demanding competence standard can be constitutionally justified only if the punishment stakes in delinquency proceedings are lower than those facing criminal defendants and the objectives of juvenile justice policy are broader than punishment.").

To be competent, a child facing a certification proceeding must understand the right to a jury trial in adult criminal court and be able to make trial-related decisions, such as whether to accept a plea deal. *Cf. Godinez v. Moran*, 509 U.S. 389, 398-99 (1993) (stating that an adult defendant must meet the *Dusky* standard of competency before pleading guilty). If the consequences of a child accepting a plea deal involve "presumed placement in a correctional facility," then the child "must demonstrate the same level of decisionmaking capacity as an adult making a similar decision in a criminal proceeding." Restatement of Children and the Law § 15.30 cmt. d (Am. L. Inst., Tentative Draft No. 2, 2019). This is because the child must understand the long-term consequences of accepting the plea deal to be able to rationally choose between the available options. *Id.* And in adult criminal court, "plea bargains have become so central to the administration of the criminal justice system" that plea bargaining "*is* the criminal justice system." *Missouri v. Frye*, 566 U.S. 134, 143-44 (2012) (second passage quoting Scott & Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992)).

Along with potential trial-related decisions that a juvenile would need to make if certified for criminal proceedings as an adult, the certification hearing itself is a critical part of the process. *See Anthony Lee R. v. State*, 113 Nev. 1406, 1410 n.1, 952 P.2d 1, 4 n.1 (1997) ("The juvenile court's decision to retain jurisdiction or certify for criminal proceedings is a much more momentous and life-changing event for a juvenile than is an adjudication of delinquency . . . ."). When considering whether to certify a juvenile for criminal proceedings as an adult, the juvenile court must consider a number of complex and nuanced factors. *See Seven Minors*, 99 Nev. at 434-35, 664 P.2d at 952; Restatement of Children and the Law

SUPREME COURT
OF
NEVADA

(O) 1947A

§ 13.10 (Am. L. Inst., Tentative Draft No. 6, calendared for discussion before the ALI membership in May 2024). To comply with the Due Process Clause of the Fourteenth Amendment, a certification proceeding must be fair to the juvenile. *See id.* cmt. c. One aspect of fairness is that the juvenile be competent at the certification hearing.

The *Dusky* standard applies in both juvenile court and adult criminal court under each court's respective competency statutes, but the application of the *Dusky* standard will vary depending on the facts and circumstances of each case in juvenile court. *Cf. Holmes v. Buss*, 506 F.3d 576, 579 (7th Cir. 2007) (addressing competency in the capital habeas context and noting that "[t]he test is unitary but its application will depend on the circumstances. They include not only the litigant's particular mental condition but also the nature of the decision that he must be competent to make"). Here, on the same day that the State filed the petition of juvenile delinquency against D.C. in juvenile court, it also filed a petition to certify him for criminal proceedings as an adult. The delinquency petition included counts for multiple offenses that would be felonies if tried in adult criminal court, including murder, attempted murder, and robbery, each with a deadly weapon. In defending the proceedings to certify him to adult court, D.C. faced a high-stakes criminal prosecution with the possibility of severe punishment. No rationale exists for assessing D.C.'s competency by considering only what he would face in juvenile court rather than considering the consequences that he would face and the decisions that he would need to make if certified to proceed in adult criminal court. *See* Restatement of Children and the Law § 15.30 cmt. c (Am. L. Inst., Tentative Draft No. 2, 2019) ("A juvenile who faces the possibility of criminal prosecution as a result of a transfer proceeding is competent only if he or

she satisfies the criminal-court standard."). Given the seriousness of the charges in the delinquency petition and the possibility of life-altering consequences should D.C. be certified to adult criminal court, D.C. was only competent to proceed to the certification hearing if he met the NRS 62D.140 prongs at the level of a competent adult defendant.

2.

We next turn to whether the juvenile court correctly considered the facts and circumstances of the case when it found D.C. competent, and, if so, whether substantial evidence supported that finding. In the absence of a clear statement from the juvenile court about the level of ability that it was using to consider whether D.C. was competent to proceed, it is difficult to discern whether the juvenile court found that D.C. was competent according to juvenile norms or if it determined that he was competent at the level of ability and understanding required to proceed in adult criminal court. In its ruling, the juvenile court emphasized the differences between juvenile court and criminal court, seemingly acknowledging that competency to be adjudicated in criminal court would require a higher ability or comprehension level. Focusing on NRS 62D.140(2), which requires understanding of "the nature and purpose of the court proceedings," the court "found [the second prong] to be a problem" and explained that arguments on this prong often stem from the fact that there are different procedures and consequences in criminal court than in juvenile court. The court distinguished competency requirements in juvenile court from criminal court by stating that "[o]bviously if we were in a criminal proceeding, you would really want to make sure the individual understands what the role of the jury is and how that works."

Of note, the juvenile court made no finding on whether D.C. understood the concept of plea bargaining—it asked, "[D]oes he really understand the plea bargain?" But instead of reaching a definitive conclusion, the court stated that "the plea bargain really is a nomenclature that comes from the adult criminal side." To be competent to proceed to a certification hearing in this case, D.C. must understand what the stakes are should the juvenile court certify him for proceedings in adult criminal court. *See Frye*, 566 U.S. at 143 (explaining that the adult criminal justice system "is for the most part a system of pleas, not a system of trials") (quoting *Lafler v. Cooper*, 566 U.S. 156, 170 (2012)). This suggests that the court viewed competency through the lens of juvenile proceedings without considering the full context of D.C.'s case.

The expert testimony sheds additional light. First, although Dr. Brown educated D.C. on certain concepts that are only present in adult criminal court, such as a jury trial, she concluded that D.C. "could assist his attorney at the level expected from a minor child." And at the competency hearing, Dr. Brown stated that she felt that Dr. Jones-Forrester was evaluating D.C.'s competency at a level that was "more consistent with an adult in criminal court than with a juvenile" and opined that the degree of ability required for competency is lower in juvenile court. Next, Dr. Foerster, in evaluating D.C.'s competency, noted Dr. Jones-Forrester's conclusion that D.C. struggled with the concept of a jury trial. Dr. Foerster included in her report some of D.C.'s comments regarding jury trials, which are a component of adult criminal trials. She also included D.C.'s statements recognizing the possible consequences of a conviction, including a life sentence, again something that would only occur in criminal court. But her testimony indicated that she used the "juvenile adjudicated

competency instrument," which is used for juvenile competency assessments. And regarding Dr. Jones-Forrester's evaluation, Dr. Foerster posited that Dr. Jones-Forrester's "bar for acceptable competence is pretty high." That the juvenile court sided with the experts who testified in favor of determining competency under a lower ability level further suggests that the juvenile court measured D.C.'s competency against juvenile norms rather than against the adult criminal context D.C. would face if certified. From this record, it appears that the district court applied an incorrect juvenile court standard to determine D.C.'s competence.

Even had the juvenile court appropriately considered the context of this case and found that D.C.'s competency was commensurate with that of a competent adult criminal defendant, such a finding is not supported by substantial evidence. No expert established that D.C. was competent to proceed in adult criminal court as to the second and third of NRS 62D.140's three prongs. Compounding this problem, the juvenile court failed to make findings on the conflicting evidence of competency. When experts give conflicting psychiatric testimony as to competency, the factfinder resolves that conflict, and those findings will be sustained so long as they are supported by substantial evidence. *Ogden v. State*, 96 Nev. 697, 698, 615 P.2d 251, 252 (1980). Here, the experts disagreed as to D.C.'s competency and, seemingly, as to whether a more relaxed juvenile court level of ability applied. The experts who determined that he was or could be competent did so based on suspicions that D.C. was malingering. In contrast, Dr. Jones-Forrester, who concluded that D.C. was not competent, also concluded after performing validity tests that he was not malingering. Dr. Foerster was uncertain about D.C.'s competency but did not use validity measures when concluding that D.C. was malingering. Instead, she stated

SUPREME COURT
OF
NEVADA

(O) 1947A

14

that she "believed that [D.C.] put forth less than optimal effort" and concluded that the court could find him competent if it believed that D.C. had "greater knowledge than what he demonstrated during [the] evaluation." And the record does not indicate that Dr. Brown, who also concluded that D.C. was malingering, did any testing for validity. As the State conceded during oral argument, the juvenile court did not make written or oral findings on D.C.'s effort or malingering during the competency evaluations. Nor did the court state that it was relying on the testimony or conclusions of a particular expert or experts or resolve the conflicts between the experts' opinions. The court's failure to make findings resolving these uncertainties and conflicts prevents us from engaging in meaningful review or from concluding that its decision was based on substantial evidence. *Cf. Somee v. State*, 124 Nev. 434, 443, 187 P.3d 152, 158 (2008) (holding that a district court's failure to make findings prevented appellate review).

We are also concerned that the juvenile court failed to address or follow the conditions of frequent rehearsal, periodic reevaluation, and if necessary, additional restoration sessions set by those experts to sustain a competency determination. The only expert—Dr. Brown—to conclude that D.C. was competent under all three prongs testified that for individuals such as D.C. "who have cognitive deficits . . . competency is a fluid state" and can be lost. She recommended that D.C.'s competency be periodically reassessed so that additional competency restoration sessions could be scheduled if he needed them to maintain competency. And Dr. Foerster— who was unsure whether D.C. was competent—agreed that continued education "might be beneficial for [D.C.] . . . to, at minimum, maintain his present knowledge base until the charges are resolved." In concluding that

D.C. was competent, the juvenile court neglected to address these experts' recommendation for additional education to ensure continued competency, further mandating vacatur and remand here. *See In re J.M.*, 769 A.2d at 663-64 (remanding for a new competency determination because the family court failed to address the needs established by the expert for the child to be competent).

## B.

The State argues that even if the juvenile court erred by finding D.C. competent, that error is harmless because D.C. was properly certified to adult court and may raise competency again in adult criminal court. We disagree. The juvenile court did not properly resolve D.C.'s competency challenge before proceeding to the certification hearing. If D.C. was incompetent, the court "could go no further with the proceedings." *In re Two Minor Children*, 95 Nev. at 231, 592 P.2d at 169. Without a proper competency determination, it was error to proceed to certification.

## III.

For these reasons, we vacate the juvenile court's competency determination and remand for a new competency determination, supported by appropriate findings. The stakes here are high, and the record does not show the juvenile court correctly assessed D.C.'s competency to proceed. And because we vacate the competency determination, we necessarily vacate the order certifying D.C. for criminal proceedings as an adult that followed the competency determination. On remand, the juvenile court

should order further evaluations as necessary to appropriately weigh D.C.'s competency and take care to make sufficient findings on the evidence.

_____ , J.
Pickering

We concur:

_____ , C.J.
Cadish

_____ , J.
Stiglich

_____ , J.
Herndon

_____ , J.
Lee

_____ , J.
Parraguirre

_____ , J.
Bell

SUPREME COURT
OF
NEVADA

(O) 1947A

17